IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARRIE ALBERS, on Behalf of Herself and Others Similarly Situated,

Plaintiff,

v.

SETERUS, INC.,

Defendant.

**CLASS ACTION COMPLAINT**
[JURY TRIAL DEMANDED]

Carrie Albers ("Plaintiff"), on behalf of herself and all others similarly situated, files this class action complaint against Seterus, Inc. ("Seterus" or "Defendant") and states:

## NATURE OF THE ACTION

1. This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from Seterus' systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans.

2. Specifically, Seterus sends borrowers form letters alleging that the borrowers are in default of their mortgages and that the failure to immediately make a ***full and complete*** payment of all arrearages will result in immediate acceleration of their loan.

3. The form letter has been distributed across the nation, including a form letter sent out to citizens and residents of the state of Kansas (hereinafter referred to as the "Kansas Final Letter(s)").

4. The Kansas Final Letter presents an ultimatum: pay the entire balance of arrearages immediately *or* face acceleration, which means the entire balance of the loan will be owed immediately.

5. Upon information and belief, the ultimatum does not comport with Seterus'

intentions, corporate policy, or legal authority. Thus, Seterus' representation that failure to immediately pay all arrearages will result in immediate acceleration of the loan is false.

6. This false and deceptive ultimatum in the Kansas Final Letter contradicts Seterus' actual policy to ***never*** accelerate a loan so long as *any* payment sufficient to bring the loan less than 45 days delinquent is made prior to the expiration date set forth in the Kansas Final Letter.

7. The Kansas Final Letter sent by Seterus to Plaintiff and others similarly situated is a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to Seterus that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure.

8. By misrepresenting the conditions under which Seterus intends to accelerate mortgage loans, the Kansas Final Letter creates a false sense of urgency, intimidates consumers into making payments to Seterus beyond what is necessary to avoid acceleration, and deprives consumers of the ability to make informed decisions in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA") and the Kansas Consumer Protection Act, K.S.A. §50-623, *et seq.* ("KCPA").

9. This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who are members of the Class (defined below) to whom Seterus has sent or will send a Kansas Final Letter during the applicable Class Period (defined below).

**<u>JURISIDICTION AND VENUE</u>**

10. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 in that this action arises under, *inter alia*, the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*.

11. This Court has jurisdiction of the FDCPA, KCPA claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711–1715, in that (i) the putative class

contains more than 100 members; (ii) the class claims total more than $5 million; and, (iii) there is minimal diversity because Seterus is a citizen of a different state than Plaintiff or at least one member of the Class, some of whom have moved outside of Kansas in the past three years, such that there is minimal diversity.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 in that the state law allegations contained herein are so related to the claims asserted under 15 U.S.C. 1692 *et seq*. over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims asserted herein occurred within this District.

**PARTIES**

14. Plaintiff is a citizen and resident of Wyandotte County, Kansas.

15. Seterus is a corporation organized and existing under and by virtue of the laws of the State of Delaware.

16. Upon information and belief, Seterus is a "specialty mortgage servicer" that specializes in collecting delinquent and/or high risk residential mortgage loans.

17. Seterus frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), including with regard to Plaintiff's mortgage loan because Seterus obtained the servicing rights while in a state of default.

18. Seterus is regularly engaged in the business of collecting debt in the State of Kansas and is therefore a "supplier" as the term is defined by K.S.A. § 50-624(L). However, Seterus does not originate loans and is not a "lender" as the term is defined by K.S.A. § 50-624(f).

19. Seterus' employees, affiliates, directors, agents, and attorneys act under the

direction and supervision of Seterus and, therefore, Seterus is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of *respondeat superior*.

**FACTUAL ALLEGATIONS**

20. Plaintiff is an owner of a residential home located at 315 N. 16th Street, Kansas City, Kansas 66102. This home is secured by a mortgage owned, backed, or controlled by Federal National Mortgage Association ("Fannie Mae") that is serviced by Seterus.

21. Plaintiff's mortgage is governed by a promissory note, ("the Note") which defines default as failure to pay the full amount of each monthly payment on the date it is due.

22. On or about August 7, 2015, Plaintiff's mortgage was service transferred to Seterus while in a state of default.

23. Seterus is not a bank, does not originate mortgage loans, and only becomes involved with a consumer by acquiring the servicing rights to a portfolio of loans from Fannie Mae or from another mortgage loan servicer with Fannie Mae's consent.

24. Upon information and belief, Seterus services more than 500,000,000 high risk residential mortgage loans owned, backed, or controlled by Fannie Mae.

25. Upon information and belief, Seterus serviced approximately 50,000 high risk residential mortgage loans within the State of Kansas at all times relevant hereto.

26. Based upon the assumption that Seterus's portfolio demographics are similar to those of the housing market in general, 66% of those 50,000 mortgage loans are jointly held by married couples resulting in an estimated 83,000 consumers within the State of Kansas whose residential mortgage loans were serviced by Seterus at all times relevant hereto.

27. Assuming that the total number of loans serviced by Seterus in the State of Kansas

during the previous three years has remained constant and that at least three percent (3%) of its loans reach maturity, are foreclosed upon, or are service transferred each year, the total number of consumers within the State of Kansas whose mortgage loans have been serviced by Seterus during the previous three years is expected to exceed 90,000.

28. As a specialty mortgage servicer, Seterus acquires servicing rights from Fannie Mae to collect payments, fees, and other amounts owed by consumers on defaulted or high risk loans and provides related "services" to investors.

29. Upon information and belief, Seterus earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other penalties.

30. Upon information and belief, when Seterus acquires the servicing rights to a particular loan portfolio a substantial number, if not all, of the loans contained in that portfolio are delinquent and/or at an increased risk of becoming delinquent.

31. Accordingly, a high percentage of the residential mortgage loans serviced by Seterus experience one or more payment delinquencies of 45 days or more.

32. Upon information and belief, Plaintiff's loan was in a state of default at the time that Seterus acquired servicing rights thereto.

33. During the course of Seterus' servicing of Plaintiff's loan, Seterus occasionally alleged that her loan became more than 45 days delinquent under the terms of the Note.

34. Upon information and belief, Seterus sends a form letter that it refers to as a "Kansas Final Letter" to consumers that become more than 45 days delinquent in an effort to coerce and intimidate consumers into paying the entire default amount of the loan.

35. True and correct copies of Kansas Final Letters sent to Plaintiff are attached as

**Exhibits A-B**.[1]

36. The Kansas Final Letters specifically state:

> "***If full payment*** of the default amount is not received by us . . . on or before [the Expiration Date], ***we will accelerate*** the maturity date of your loan and upon such acceleration the ENTIRE indebtedness of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and owing." (emphasis added).

37. The Kansas Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if "full payment of the default amount is not received . . . on or before the Expiration Date," when Seterus' actual policy, attested to by a Rule 30(b)(6) Deponent, is to ***never*** accelerate a loan that is less than 45 days delinquent.

38. The following is a relevant portion of Seterus' deposition in a similar case[2]:

> Q. My understanding of your testimony just now is that if Seterus receives a payment in response to an NC Final,[3] then the debt is no longer 45 days due and so that's sufficient to hold off the acceleration process?
> A. That's correct.
>
> Q. Okay. And is that -- is that Seterus' policy just with regard to North Carolina?
> A. That's Seterus' policy for the loans where we are accepting payments and we're able to apply full contractual payment to the loan.
>
> Q. Okay. So in response to a letter like Exhibit 11,[4] Seterus' policy, if they're accepting payments, is if they receive an amount equal to a normal monthly payment, they will not accelerate the debt?
> A. As long as, right, it brings the loan less than 45 days due.

---

[1] These exhibits are non-exclusive examples of the Kansas Final Letters sent to Plaintiff.

[2] *See* **Exhibit C** (a true and accurate copy of pages 177-180 of Seterus' 30(b)(6) deposition) and **Exhibit D** (a true and accurate copy of the corresponding Notice of Deposition to Seterus, Inc.).

[3] This excerpt is of a deposition taken in North Carolina regarding a NC Final Letter; however, the NC Final Letter at issue in this deposition excerpt is substantially similar to the Kansas Final Letters discussed in this Complaint and the legal issues are virtually identical.

[4] Exhibit 11 (a true and accurate copy of which is attached hereto as **Exhibit E)** was a NC Final Letter substantially similar to the Kansas Final Letters provided as **Exhibits A-B**.

> Q. Okay. Where does it say that in this letter that if you make one payment or enough such that one payment is recorded, we won't do this, or does it say that?
> A. Well, the expiration date provides really the -- the timeline where the customer needs to make some sort of payment so that the 45 days are not past due.
>
> Q. Not some sort of payment, $3,204.72, that's what it says, right?
> A. Yes. And we're allowing the customer, we're also -- yes. We would like the $3,204.72. But our objective is not to foreclose on our customers. Our objective is to be able to take -- even if it's a partial payment, if where -- if they're in the bucket where a partial payment can be made, our objective is to collect that payment to help them stay in their house. Because them making payments, staying in their house helps us in our business as well. Foreclosing on them is really not, you know, helpful to us nor to them.
>
> Q. Yeah.
> A. And so therefore, this letter is sent out per the guidelines that are outlined and we allow the customer -- we allow the customer to make that partial payment. And then when a full -- if a partial payment does not equal the contractual payment, then your -- then this letter still -- still stands. But because a contractual payment is able to be applied to the loan account, then we don't have to continue with the -- this letter.

[Seterus Dep. at pp. 177:11-180:10]

39. Upon information and belief, Seterus will not accelerate consumers' loans and proceed to foreclosure even if the consumer fails to make a payment equal to the default amount listed in any Kansas Final Letter *and* fails to make any payments that come due during the notice period.

40. Put simply, Seterus does not accelerate loans in the manner threatened by its Kansas Final Letters in the usual course of business.

41. The Kansas Final Letters misrepresent the conditions under which Seterus intends to accelerate loans and materially deceive consumers into believing their loans *will* be accelerated if they fail to fully cure their default prior to the specified Expiration Date.

42. The Kansas Final Letters misrepresent Seterus' intentions and present consumers with a false ultimatum that they satisfy all arrearages within the false deadline identified in the Kansas Final Letter, or face acceleration and ultimately foreclosure.

43. The Kansas Final Letters are materially misleading in that they threaten consumers with acceleration and foreclosure when Seterus has neither the present intent, nor the present ability, to undertake such actions.

44. The Kansas Final Letters cause consumers to believe that they will lose their homes if all arrearages to Seterus are not paid within the time period identified in each particular Letter.

45. The Kansas Final Letters cause consumers to believe that they will lose their homes if they do not become current on their loan within the time period identified in each particular Letter.

46. The false threats of acceleration and foreclosure contained within the Kansas Final Letters are used by Seterus to scare and intimidate consumers as a means of collecting debt.

47. The false threats of acceleration and foreclosure contained within the Kansas Final Letters have the potential of causing individuals to send additional money to Seterus that, absent the false and misleading statements, could have been allocated to other necessary expenditures, including food and utility payments.

48. The false threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not have made absent Seterus' misrepresentations.

49. Seterus understands the frightening and unnerving nature of the misrepresentations utilized in its Kansas Final Letters.

50. Upon information and belief, the form Kansas Final Letter was purposefully crafted in such a way to frighten and intimidate consumers into paying money to Seterus.

51. Accordingly, the Kansas Final Letters threaten action not actually intended to be taken by Seterus in the ordinary course of business and constitute unfair threats, coercion, or attempts to coerce payments from consumers in violation of the FDCPA and/or KCPA.

52. Upon information and belief, Seterus uses the identical language set forth above and in **Exhibits A-B** in all of its Kansas Final Letters that are sent to borrowers who are in default.

53. By definition, each class member has received one or more Kansas Final Letters.

54. Each Kansas Final Letter constitutes a separate violation of the FDCPA and/or the KCPA in that, *inter alia*, each Kansas Final Letter misrepresents Seterus' intentions by threatening to take action not taken in the ordinary course of business nor intended to be taken in the particular instance.

55. Each Kansas Final Letter creates a false sense of urgency designed to unfairly coerce payments from consumers in that the letters indicate an intent to accelerate indebtedness if the arrearages are not cured by the deadline set forth in the Kansas Final Letters; however, pursuant to Defendant's actual corporate policy discussed *supra*, Seterus does not actually intend to follow through with its false ultimatum so long as consumers *partially* satisfy their arrearage.

56. As a result of the forgoing, Plaintiff has been subjected to false and deceptive debt collection attempts that created a false sense of urgency and deprived her of accurate information from which she could make reasoned decisions.

**CLASS ALLEGATIONS**

57. Pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action on behalf of a Class defined as follows:

> All Kansas residential mortgagors to whom Seterus sent a letter substantially similar to the Kansas Final Letters attached as **Exhibits A-B** to this Class Action Complaint, in that the letter warned of immediate acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of

> the "amount due" or "default amount," dated within three years preceding the date of filing of this Class Action Complaint.

Excluded from the Class are officers, directors, and managers of Seterus; the Court; and staff of the judicial officer(s) assigned to this action.

58. The Class as defined above shall be for a period commencing three years before the filing of this Class Action Complaint and ending on the last day of trial or, in the event of a class settlement, ending on the date of entry of an order preliminary approving such class settlement, whichever is later (the "Class Period").

**FDCPA Subclass**

59. Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff seeks certification of a subclass for the FDCPA claim (the "FDCPA Subclass" or "Subclass"), as follows:

> All Kansas residential mortgagors whose mortgage servicing was transferred to Seterus while in a state of default, to whom Seterus sent a letter substantially similar to the Kansas Final Letters attached as **Exhibits A-B** to this Class Action Complaint, in that the letter warned of immediate acceleration of the loan and/or commencement of foreclosure proceedings, upon less than full payment of the "amount due" or "default amount," dated within one year preceding the date of filing of this Class Action Complaint.

Excluded from the Class are officers, directors, and managers of Seterus; the Court; and staff of the judicial officer(s) assigned to this action.

60. The FDCPA Subclass shall be for a period commencing one year preceding the filing of this Class Action Complaint and ending on the last day of trial or, in the event of a class settlement, ending on the date of entry of an order preliminary approving such class settlement, whichever is later (the "Subclass Period")

61. *Numerosity*: Upon information and belief, the Class and the Subclass each contain several thousand members, based upon an analysis of the volume of Seterus' mortgage default servicing activity nationwide and in Kansas.

62. The size of the Class and of the Subclass are each so numerous that joinder of all members would be impracticable.

63. *Commonality*: Several common questions of law or fact pertaining to claims of the Class and of the Subclass are presented in this action, including without limitation:

- Were Seterus' communications seeking to collect amounts it claimed were in default on home mortgages a form of "debt collection" under the FDCPA?
- Is Seterus a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6), when it communicates with homeowners whose mortgage servicing rights it acquired after default?
- What were Seterus' policies and practices concerning acceleration of defaulted loans upon receipt of a partial payment?
- What were Seterus' policies and practices concerning the commencement of foreclosure proceedings against homeowners who made a partial payment of the "amount due" or "default amount" as described in Seterus' Kansas Final Letter?
- Does the Kansas Final Letter violate the FDCPA in one or more of the ways alleged? and
- Does the Kansas Final Letter violate the KCPA in one or more of the ways alleged?

64. *Typicality*: The claims of Plaintiff are typical of the claims of the Class and the Subclass and all are based on the same facts and legal theories, as all such claims arise out of the complained-of Seterus' conduct.

65. *Adequate Representation:* Plaintiff is an adequate representative of the Class and the Subclass in that she is a member of each and does not have antagonistic or conflicting claims with other Class and Subclass members.

66. Plaintiff has also retained counsel experienced in the prosecution of complex class actions.

67. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action.

68. Plaintiff is aware of her responsibilities as class representative and has accepted

such responsibilities.

69. *Injunctive or Declaratory Relief*. The grant of injunctive or declaratory relief is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Seterus has acted and continues to act in violation of federal and state debt collection law with respect to all Kansas homeowners whose mortgages it services.

70. Seterus has acted and refused to act on grounds generally applicable to the Class making final injunctive and declaratory relief appropriate.

71. *Predominance*: Under Federal Rule of Civil Procedure 23(b)(3), the common questions of law and fact listed above, and others, predominate over any individual issues that may be presented.

72. Seterus has sought to and continues to attempt to collect amounts it claims are due under defaulted home loan in Kansas using form letters, and its policies and practices regarding partial payments were and are consistently applied to all homeowners.

73. *Superiority*: Under Federal Rule of Civil Procedure 23(b)(3), the Class and the Subclass are appropriate for certification because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

74. Actual tangible damages are unlikely based upon the violations alleged, and the statutory damages sought on behalf of Class members are small, such that individual Class members could not economically pursue individual actions.

75. Absent a class, Class members would be unlikely to receive any recovery. Accordingly, individual Class members do not have an interest in controlling the prosecution of separate actions. Plaintiff's counsel anticipate no undue difficulties in the management of this action on a class basis.

76. Alternatively, absent a class courts throughout Kansas may be confronted with a multiplicity of lawsuits, which would unnecessarily burden the courts while also creating the risk of inconsistent rulings and contradictory judgments.

**FIRST CAUSE OF ACTION**
**(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*)**

77. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

78. Seterus is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

79. Seterus is a debt collector in servicing Plaintiff's mortgage because her loan was in default at the time Seterus obtained the servicing rights.

80. Plaintiff and all members of the Subclass are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692(a)(3), since they are natural persons allegedly obligated to pay a consumer debt.

81. At all material times, Plaintiff's debt and the debts of the Subclass members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

82. Dunning letters such as those attached as Exhibits A-B hereto are to be evaluated by the objective "least sophisticated consumer" standard.

83. FDCPA 15 U.S.C. § 1692(e) states in part:

> A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

84. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it

used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and/or threatened to take action that it could not legally take.

85. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

86. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e) in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

87. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it misrepresented its intentions and presented Plaintiff and other consumers with a false ultimatum that they must pay all arrearages within the false deadline identified in the Kansas Final Letters, or face immediate acceleration and initiation of foreclosure proceedings.

88. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures under the terms threatened in its Kansas Final Letter.

89. Seterus' violations of 15 U.S.C. § 1692(e) were material, *inter alia*, because the Kansas Final Letter mislead consumers about information necessary to permit them to determine their best course of conduct; created a substantial risk of causing homeowners to make less than optimal decisions in managing their finances; and increased and foreseeably increase the anxiety of homeowners regarding the risk of immediate acceleration or commencement of foreclosure proceedings.

90. Moreover, Congress has expressly determined that Seterus' violations are material by specifically designating that threats to take actions that the debt collector does not intend to take

are an unfair collection practice and a violation of the FDCPA.

91. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(e) by using false representations and deceptive means, including false threats of acceleration and commencement of foreclosure proceedings, and the Kansas Final Letters are therefore illegal.

92. FDCPA § 1692(f) states in pertinent part that “a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.”

93. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

94. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it falsely represented its intention to accelerate and foreclose on Plaintiff’s home in an effort to induce the payment of additional funds.

95. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it misrepresented its intentions and presented Plaintiff and other consumers with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Kansas Final Letters, or face acceleration and ultimately foreclosure.

96. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

97. Seterus has attempted to collect debt in violation of 15 U.S.C. § 1692(f) by using unfair and unconscionable means, including false threats of acceleration and foreclosure.

98. As a result of Seterus’ unlawful attempts to collect debt, Plaintiff and the FDCPA Subclass Members are entitled to statutory damages, as well as their reasonable attorneys’ fees.

**SECOND CAUSE OF ACTION**
**(Violations of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*)**

99. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

100. Seterus is a "supplier" as defined by the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-624(l).

101. Plaintiff and the Kansas Class are "Consumers" as that term is defined by K.S.A. § 50-624(b).

102. Each occurrence of Seterus' practice of soliciting consumers through the sending of Kansas Final Letters constitute separate "consumer transactions" as that term is defined by K.S.A. § 50-624(c).

103. Seterus has attempted to collect debt in violation of the KCPA from Plaintiff and the Kansas Class as described *supra* in that, *inter alia*, it has falsely represented that failure to immediately and completely satisfy all arrearages would result in acceleration of their loan in contravention of Seterus' specific intentions and ordinary practices.

104. Seterus has attempted to collect debt in violation of K.S.A. § 50-626, in that it used deceptive acts and practices in connection with consumer transactions, including, but not limited to, the willful use of exaggerated, false, or ambiguous representations of material fact in the Kansas Final Letters (e.g., utilizing false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes as a means to coerce payments).

105. Seterus has attempted to collect debt in violation of K.S.A. § 50-626, in that it misrepresented its intentions and presented Plaintiff and other consumers with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Kansas Final Letters,

or face acceleration and ultimately foreclosure.

106. Seterus has attempted to collect debt in violation of K.S.A. § 50-626, in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

107. Seterus has attempted to collect debt in violation of K.S.A. § 50-626, in that it has threatened to take action, including acceleration and foreclosure, when such actions are not taken in the usual course of business.

108. Seterus has attempted to collect debt in violation of K.S.A. § 50-627 by using unfair threats and coercion, including false threats of acceleration and foreclosure.

109. As a result of Seterus' unlawful attempts to collect debt, Plaintiff and the Kansas Class are entitled to statutory damages, injunctive relief, as well as their reasonable attorneys' fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Carrie Albers and all others similarly situated pray the Court for judgment as set forth below:

1. Certifying this action as a class action as provided by Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiff as a class representative, and appointing the undersigned as Class counsel;

2. Declaring that Seterus has violated the FDCPA and/or KCPA in the ways alleged in this Class Action Complaint;

3. Enjoining further violations of these statutes by Seterus and its agents and employees;

4. Awarding Plaintiff and the Class statutory damages for all causes of action, including civil penalties for violation of the KCPA;

5. Awarding Plaintiff and the Class their reasonable attorneys' fees and costs incurred pursuant to the FDCPA and/or KCPA;

6. Ordering that the costs of this action be taxed to Seterus; and,

7. Providing such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 24th day of August, 2018.

*/s/ Brittany A. Boswell*
Brittany A. Boswell
Kansas Reg. No. 27399
Mitchell Breit (*pro hac vice* forthcoming)
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
bboswell@simmonsfirm.com
mbreit@simmonsfirm.com

Eric Johnson ((*pro hac vice* forthcoming)
**SIMMONS HANLY CONROY**
One Court Street
Alton, Illinois 62002
Telephone: (618) 259-2222
Facsimile: (618) 259-2251
ejohnson@simmonsfirm.com

Scott C. Harris (*pro hac vice* forthcoming)
N.C. Bar No. 35328
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-500
Facsimile: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com

Edward H. Maginnis (*pro hac vice* forthcoming)
N.C. State Bar No. 39317
Karl S. Gwaltney (*pro hac vice* forthcoming)
N.C. State Bar No. 45118
Asa C. Edwards (*pro hac vice* forthcoming)
N.C. State Bar No. 46000
**MAGINNIS LAW, PLLC**
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com
aedwards@maginnislaw.com

*Attorneys for Plaintiff and the Proposed Class*